UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHARM HOWIE,
    Plaintiff,

v.

CITY OF PROVIDENCE, by and through its Treasurer, James J. Lombardi, III, alias and, PATRICK POTTER, alias and, MATTHEW SHERIDAN, alias and, MICHAEL PLACE, alias, individually and in their official capacities as Providence Police officers,
    Defendants.

C.A. No. 17-604-JJM-LDA

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

The plaintiff in this case, Charm Howie, seeks to hold the City of Providence liable for the alleged misconduct of three Providence Police officers through a theory of municipal liability. The Defendant City of Providence has moved for judgment on the pleadings, asking the Court to dismiss Counts One through Five. ECF No. 17. Defendant's motion is DENIED for the following reasons.

## I. BACKGROUND

The Court begins with a recitation of the necessary facts pleaded by Mr. Howie in the light most favorable to him. The Court accepts as true all well-pleaded facts from Mr. Howie's Complaint (ECF No. 1) and draws all reasonable inferences in his favor. *Doe v. Brown Univ.*, 896 F.3d. 127, 130 (1st Cir. 2018) (quoting *Kando v. R.I. State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018)). Further, the Court "supplement[s] those facts by reference to documents incorporated

in the pleadings." *Kando*, 880 F.3d at 56 (quoting *Jardin De Las Catalinas Ltd. P'Ship v. Joyner*, 766 F.3d. 127, 130 (1st Cir. 2014)).

### A. Factual Allegations

Mr. Howie attended the Providence Police Training Academy in 2014. Defendants Matthew Sheridan and Michael Place were also attending the Academy that year. ECF No. 1 at 3. During his time at the Police Academy, Defendants often made comments to Mr. Howie, criticizing him and showing they did not want Mr. Howie there, telling him, "you need to quit." *Id.* at 3. Following a "feedback session" wherein Officer Sheridan told him to "get out of here," Mr. Howie was dismissed from the Academy by Providence Police Major Francisco Colon with little explanation other than that it was not "working out." *Id.* at 4. Mr. Howie obtained other employment and had no further contact with the Defendants until the incident in question. *Id.*

A year later, Mr. Howie was driving home and passed two parked Providence Police vehicles that he recognized belonged to Officers Sheridan and Place. Mr. Howie made eye contact with Officer Place, nodded, and then saw Officer Sheridan running to get into his car. Mr. Howie saw Officer Sheridan turn his car around, and both Officers began following Mr. Howie in their vehicles. *Id.* at 4-5. Mr. Howie continued driving with no sign that Officers Place and Sheridan intended for him to pull over. He admits he was driving with a headlight out. *Id.* There were other police cars with flashing lights in front of a house down the street from Mr. Howie's home, and upon passing those lights, Officers Place and Sheridan put on theirs. Believing the officers were responding to the situation down the street, Mr. Howie continued a short way to his home and parked in his driveway. *Id.* Mr. Howie exited his vehicle and walked to the front of his home, where Officers Sheridan and Place were parked at the end of his driveway. *Id.* at 5-6.

Officers Place and Sheridan approached Mr. Howie. Officer Sheridan began swearing at Mr. Howie and told him that his headlight was out. Mr. Howie acknowledged that his headlight was out and that the police might ticket him. He asked the officers not to swear below the window where his children were sleeping. *Id.* Mr. Howie turned around slowly and Officer Sheridan told him, "I know you; you're all set." *Id.* At this point, Officers Sheridan and Place continued to make comments to Mr. Howie and discuss the possibility of him receiving a ticket for the headlight until Defendant Patrick Potter arrived. *Id.* Officer Potter was the supervisor of Officers Sheridan and Place. *Id.* at 2. When Officer Potter arrived, he told Officer Sheridan to "put [Mr. Howie] on the car," at which point Officer Sheridan pushed Mr. Howie against the car and patted him down, maintaining physical contact for an extended period while Officer Potter searched Mr. Howie's car, without consent. *Id.* at 7. There was no indication that the officers suspected that Mr. Howie was armed and dangerous at any time before or during the search. *Id.*

Officers Sheridan and Place brought Mr. Howie to one of the police vehicles and put him inside. *Id.* After Mr. Howie fielded yet another series of verbal insults from Officer Sheridan, Officer Sheridan lunged at Mr. Howie and tried to choke him. Officers Place and Potter stood back and watched until Officer Potter noticed a neighbor watching and told Officer Sheridan to calm down. *Id.* at 8. Officer Potter told Mr. Howie to stop looking at him "violently" and asked Mr. Howie what he wanted to do next. Mr. Howie indicated he wanted to speak to a supervisor, and Officer Potter told him that he was the supervisor. *Id.* Mr. Howie tried to discuss the situation, but Officer Potter swore at him and told Officer Sheridan to arrest Mr. Howie. Officer Sheridan told Mr. Howie, "I was just going to give you a ticket, but my boss told me I have to arrest you." *Id.* Throughout this encounter, Officers Sheridan and Place both made calls to other former

3

classmates at the Academy who had known Mr. Howie. *Id.* at 9. Ultimately, Mr. Howie was arrested and brought to the police station, where he was processed and released. *Id.* at 8.

Following Mr. Howie's arrest, he was charged with two traffic violations and disorderly conduct, a municipal violation. *Id.* at 9. When Mr. Howie refused to plead guilty to the municipal charge, the City refiled the case in Rhode Island District Court, charging him with disorderly conduct, R.I. Gen. Laws § 11-45-1(a)(1), and added charges of simple assault, R.I. Gen. Laws § 11-5-3 and resisting arrest, R.I. Gen. Laws § 12-7-10. *Id.* at 9. Over sixteen months, Mr. Howie appeared in court twenty times. *Id.* Mr. Howie was found not guilty on all counts.

Additionally, and importantly to the matter at issue in the City's motion, Mr. Howie alleges that the Providence Police Department received 200 civilian contacts in 2015, all of which were reviewed by the Chief of Police. *Id.* at 10. Seventy-five of these contacts became formal complaints, and the City sustained just seven of these. Of those seven, only one officer received discipline beyond a written warning. *Id.*

### B. Procedural History

Mr. Howie asserted nine Counts in his complaint. Counts One, Three, and Five allege violations of the Fourth, Fifth, and Fourteenth Amendments actionable under 42 U.S.C. §1983. Counts Two and Four allege violations of the Rhode Island Constitution. These five Counts are alleged against all Defendants. Counts Six, Seven, Eight, and Nine are common law torts alleged only against the Defendant Officers. Both the Defendant Officers and Defendant City of Providence have filed answers. ECF No. 3 and 9. Defendant City of Providence filed this Motion for Judgment on the Pleadings. ECF No. 14. It later amended the motion. ECF No. 17. Mr. Howie objects (ECF No. 16) to the motion, to which the City replied. ECF. No. 18. Mr. Howie filed a sur-reply. ECF No. 19.

## II. STANDARD OF REVIEW

A party can move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), and such a motion "bears a strong family resemblance to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Kando,* 880 F.3d at 58. Courts treat these motions similarly in terms of the standard of review; they are subject to the sufficiency of the factual pleadings needed to survive them. *See Aponte-Torres v. Univ. of P.R.,* 445 F.3d 50, 54 (1st Cir. 2006).

Because a Rule 12(c) motion for judgment on the pleadings mirrors the standard of a Rule 12(b)(6) motion so closely, in reviewing the merits of the pleadings, *Ashcroft v. Iqbal* controls the Court's analysis. 556 U.S. 662 (2009). The Court is compelled to accept all factual allegations as true without crediting any conclusory legal allegations. The First Circuit has further held that a court may only grant a Rule 12(c) motion if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Currans v. Cousins,* 509 F.3d 36, 43 (1st Cir. 2007) (quoting *Rivera-Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir. 1988)).

## III. DISCUSSION

To prove a proper claim for municipal liability, a plaintiff must show that the municipality at issue promulgated a policy or custom that caused their employees to conduct themselves unlawfully in their interactions with civilians. *Monell v. Dep't of Soc. Serv. of City of New York,* 436 U.S. 658, 690-1 (1978). This can be satisfied by a showing that there is either "1) an official policy articulated or adopted by a decision-maker; or 2) an unofficial custom as evidenced by widespread action or inaction," meaning a plaintiff can make a showing of deliberate indifference as evidence of the presence of a custom. *McElroy v. City of Lowell,* 741 F. Supp. 2d 349, 353 (D. Mass. 2010).

The law does not require the plaintiff to show that there was a specific policy in place that called for the violation of federal law. Instead, a plaintiff must put on evidence of conduct at the municipal level (be it action or inaction) that "gives rise to subsequent conduct of subordinate employees that violates plaintiff's rights." *McElroy*, 741 F. Supp. 2d at 355 (quoting *Hilchey v. City of Haverhill*, 537 F. Supp. 2d 255, 263 (D. Mass. 2008)). A plaintiff generally must show that a municipality knew there was a risk of unlawful behavior by its employees and that they subsequently did not act to mitigate this risk despite that knowledge.

To survive dismissal, Mr. Howie must have pleaded enough facts to show that the City knew there was a risk of civilians' rights being violated by its employees and yet deliberately failed to address this risk. Mr. Howie contends that the City has cultivated an environment in which Providence Police officers are undeterred from misconduct because of the City's lack of discipline, training, and/or oversight. In so doing, he relies on the considerable number of civilian complaints received in 2015 compared with the minuscule number of complaints investigated (with just one of those resulting in discipline beyond a written warning). At this nascent stage of the litigation process, Mr. Howie uses this preliminary information to be at least partly indicative of the City's knowledge of a risk of potential violations of constitutional rights of persons with whom the police may be interacting, and its subsequent failure to undertake any actions that may mitigate such a risk (i.e., through a more thorough investigation of civilian complaints). Additionally, three Providence Police officers (including a supervisor) engaged in this conduct with Mr. Howie and made calls to other City police officers during the encounter. These facts, coupled with the continued prosecution of Mr. Howie following these acts, invites an inference that there is indeed a custom, reinforced by a systematic failure to discipline, train, or otherwise prevent unlawful conduct on behalf of the City. If, as is required, the Court draws reasonable inferences based on

the facts alleged in Mr. Howie's complaint and analyzes them in Mr. Howie's favor as the nonmovant, Mr. Howie has sufficiently alleged that the City may have had such knowledge, and subsequently failed to act, constituting deliberate indifference that would support a pattern of misconduct among its employees when interacting with civilians.

## IV. CONCLUSION

At this early stage in the litigation process, Mr. Howie has alleged enough facts to survive the Defendants' Motion for Judgment on the Pleadings. The Court DENIES the City of Providence's Motion for Judgment on the Pleadings (ECF No. 14, as amended by ECF No. 17) for all these reasons.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

January 24, 2019